# JOHN DIMKE AND ANOTHER v. WALTER W. FINKE AND ANOTHER.[1]

December 6, 1940.

No. 32,664.

[1]Reported in 295 N. W. 75.

*Leonard Eriksson,* for appellants.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, *Kent C. van den Berg,* Special Assistant Attorney General, and *William P. Berghuis,* County Attorney, for respondents.

GALLAGHER, CHIEF JUSTICE.

This is an action under the declaratory judgments statute to determine the constitutionality of L. 1939, c. 315, § 1, 3 Mason Minn. St. 1940 Supp. § 3199-26, which amends 3 Mason Minn. St. 1938 Supp. § 3199-26 (Ex. Sess. L. 1935-1936, c. 95, § 16), known as the old age pension act, by imposing a lien in favor of the state upon all real estate belonging to a recipient of old age pension benefits. Section 2 of the act (1940 Supp. § 3199-18[b]) increases the net value of the property or the net value of the combined property which a husband and wife may have, and still be eligible to benefits, from $3,500 to $5,000.

Plaintiffs, John and Rosalia Dimke, are husband and wife. John owns a house and a small tract of land in Otter Tail county which they occupy as a homestead. Shortly after the passage of the old age assistance act they both applied for and were granted benefits. In January, 1940, after the amendment became effective, John accepted and cashed a benefit check containing the following endorsement:

"By this endorsement I acknowledge notice that the State of Minnesota has a lien upon all my property in the state as provided by law [L. 1939] under Chapter 315, for this and future payments of old age assistance to me."

Rosalia accepted a check in January, 1940, but was unable to cash it because of her refusal to sign the endorsement thereon.

In this proceeding plaintiffs seek: (1) To have the act declared unconstitutional insofar as it attempts to impose a lien upon their homestead; (2) to have the existing lien against their homestead expunged from the record; and (3) an order requiring defendants to continue the payment of old age assistance benefits to them. The trial court held the act constitutional and ordered judgment denying all of the relief demanded in the complaint. This appeal is from the judgment entered pursuant to that order.

Under the original act, Ex. Sess. L. 1935-1936, c. 95, § 15 (1938 Supp. § 3199-25), on the death of a recipient of old age assistance "or on the death of the survivor of a married couple, either or both of whom received such old age assistance," the total amount paid to either or both becomes allowable as a claim against the estate of such "person or persons" by the court having jurisdiction of the estate.

The amendment here under attack, L. 1939, c. 315, § 1, gives to the state a lien on all of the real estate of a recipient of old age benefits for the amount paid to such recipient after January 1, 1940. The material parts of c. 315, § 1, appear in the margin.[2]

On the questions presented we are concerned only with whether the legislature acted within constitutional limits when it wrote

---

[2] "(2) No person shall be paid old age assistance without first giving the state a lien on all his property situate within the state as hereinafter provided.

"(3) The total amount of old age assistance paid a recipient, including burial expenses, but without interest, shall be a lien in favor of the state upon all real property belonging to such recipient.

"(4) No old age assistance shall be given under this act until a certificate * * * shall have been prepared by the county agency granting assistance on a form provided therefor by the state agency. Such certificate, or a copy thereof, shall be filed by the county agency of the

into the law the sections providing for the imposition of a lien upon the real estate of a recipient for the amount of the benefits paid to him. The homestead, not being excluded from the effect of the lien, is subject to it if the amendment is valid.

The rules by which this court must be guided in determining whether an act of the legislature is constitutional are well established. Every law is presumed to be constitutional in the first instance. An act will not be declared unconstitutional unless its invalidity appears clearly or unless it is shown beyond a reasonable doubt that it violates some constitutional provision. The power of the court to declare a law unconstitutional is to be exercised only when absolutely necessary in the particular case and then with great caution. 6 Dunnell, Minn. Dig. (2 ed. & Supps.) §§ 8929, 8930, and 8931; State ex rel. Hildebrandt v. Fitzgerald, 117 Minn. 192, 134 N. W. 728; Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102; Muller v. Theo. Hamm Brg. Co. 197 Minn. 608, 268 N. W. 204; State v. Fairmont Creamery Co. 162 Minn. 146, 157, 202 N. W. 714, 42 A. L. R. 548. Aided by these principles, we

county granting assistance with the register of deeds of each county in this state where there is real property belonging to the recipient.

"(5) Thereupon the lien hereby imposed shall arise. It shall attach to all real property then owned by the recipient or thereafter acquired, including joint tenancy interests, and shall have effect in all counties in which such certificate shall have been filed, and shall be for such amount as may be paid the recipient as old age assistance, and shall continue until the liability for such amount is satisfied. * * *

"In case of the death of the recipient the debt secured by such lien shall be a claim against his estate and after expenses of administration, funeral expenses, expenses of last illness, and debts having preference by the laws of the United States, and taxes shall have priority over all other debts."

"(8) Such liens, after filing, shall be enforced in the manner provided by law for the enforcement of mechanic's liens upon real property, provided, no such lien, and no claim under Section 3199-25, the 1938 Supplement to Mason's Minnesota Statutes of 1927, shall be enforced against the homestead of the lienor while occupied by his surviving spouse, or minor children."

proceed to a consideration of the grounds upon which appellants base their claim that L. 1939, c. 315, is unconstitutional.

It is first urged that the law violates the equal protection provisions of the state and federal constitutions. Minn. Const. art. 1, § 2; U. S. Const. Amend. XIV. Appellants argue that in enacting Ex. Sess. L. 1935-1936, c. 95, the legislature created or defined a class of citizens whose economic condition justified the expenditure of public funds for their relief; that the all-embracing fact justifying the payment of public money for private use is "need"; that the legislature established a formula for determining who are in need, which formula included persons having property worth up to $3,500 (now $5,000); and that all persons found to be in "need" regardless of whether they own or do not own real estate are within the class covered by the act. It is then urged that by enacting c. 315, which provides for the imposition of a lien upon the real estate of those persons having real estate, the legislature imposed upon them special burdens from which others in the class, namely, those in need but not having real estate, are exempt.

Legislation which selects particular individuals from a class and imposes upon them special burdens from which others in the same class are exempt is class legislation, violative of the equal protection clause of the federal constitution and of the uniformity clause of the state constitution. Minn. Const. art. 9, § 1. Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102; 1 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 1668; State ex rel. Bd. of C. & C. H. Commrs. v. Cooley, 56 Minn. 540, 58 N. W. 150; State ex rel. Beek v. Wagener, 77 Minn. 483, 80 N. W. 633, 778, 1134, 46 L. R. A. 442, 77 A. S. R. 681; State v. Broden, 181 Minn. 341, 232 N. W. 517. These constitutional limitations do not curtail the power of the legislature to classify and to adopt different rules for different classes. They both require, however, that the classification be not unreasonable, arbitrary, or discriminatory, but that it operate equally and uniformly upon all persons in similar circumstances, Reed v. Bjornson, *supra;* that it be reasonable and based upon

actual differences, Miller v. Wilson, 236 U. S. 373, 35 S. Ct. 342, 59 L. ed. 628, L. R. A. 1915F, 829; Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327; State v. Pehrson, 205 Minn. 573, 287 N. W. 313.

Classification is, in the first instance, a legislative matter; and it must be borne in mind that "there is a strong presumption that a legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." Middleton v. Texas P. & L. Co. 249 U. S. 152, 157, 39 S. Ct. 227, 229, 63 L. ed. 527. If the classification be based upon substantial distinctions which make one class really different from another, it is not violative of the constitutional provisions even though some inequalities may result. State v. Fairmont Creamery Co. 162 Minn. 146, 202 N. W. 714, 42 A. L. R. 548; Seamer v. G. N. Ry. Co. 142 Minn. 376, 172 N. W. 765; Magoun v. Illinois T. & S. Bank, 170 U. S. 283, 300, 18 S. Ct. 594, 42 L. ed. 1037; Bosley v. McLaughlin, 236 U. S. 385, 35 S. Ct. 345, 59 L. ed. 632.

It has been frequently held that classification for tax purposes may be based upon ability to pay. State ex rel. Foot v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L.R.A. (N.S.) 732, 7 Ann. Cas. 1056; Mutual Benefit L. Ins. Co. v. County of Martin, 104 Minn. 179, 116 N. W. 572; Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102; Apartment Operators Assn. v. City of Minneapolis, 191 Minn. 365, 254 N. W. 443. It is not required of a classification for purposes of social legislation that every evil be reached. It is enough that the legislature sees a specific evil and remedies it. Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327. Governmental aid may be granted to those having no property, and denied to those having property. Miller v. Wilson, 236 U. S. 373, 35 S. Ct. 342, 59 L. ed. 628, L. R. A. 1915F, 829.

To declare an act unconstitutional, we must say that the legislature could not reasonably and intelligently make the classifica-

tion it did. Gunderson v. Williams, 175 Minn. 316, 317, 221 N. W. 231; Otis v. Parker, 187 U. S. 606, 609, 23 S. Ct. 168, 47 L. ed. 323; Patsone v. Pennsylvania, 232 U. S. 138, 34 S. Ct. 281, 58 L. ed. 539; Armour & Co. v. North Dakota, 240 U. S. 510, 36 S. Ct. 440, 60 L. ed. 771, Ann. Cas. 1916D, 548; Merrick v. N. W. Halsey & Co. 242 U. S. 568, 37 S. Ct. 227, 61 L. ed. 498. By c. 315, the legislature imposed a lien against the property of those having or thereafter acquiring real property for the amount of benefits actually paid out. Having power to grant assistance to those without property and to withhold it from those with property, Miller v. Wilson, 236 U. S. 373, 35 S. Ct. 342, 59 L. ed. 628, L. R. A. 1915F, 829, the legislature clearly had power to give assistance payments to those with property conditioned upon the imposition of a lien to the state for the amount of the grant. We find no improper classification in so doing. The act offends neither the state nor the federal constitution. Likewise, the argument that the amendment violates the constitutional safeguard against special legislation (Minn. Const. art. 4, § 33) is untenable. Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 57 S. Ct. 868, 81 L. ed. 1245, 109 A. L. R. 1327.

■ Appellants contend that the amendment is unconstitutional because it deprives them of their property without "due process of law" in violation of Minn. Const. art. 1, § 7. They argue that the money paid a recipient of old age benefits by the state is not paid to discharge a contractual obligation but is in the nature of a "gratuity" which the legislature may discontinue at will and that the state therefore lacks the power to require either its repayment or security therefor. What appellants appear entirely to overlook is the fact that they have no vested rights in old age benefits or in any other form of relief. The state may, as it has, grant such benefits, but it is not required to do so. In granting them it may impose such conditions as it deems proper and just. If a person accepts a grant, he must accept it subject to the conditions. Hawkins v. State Social Welfare Board, 148 Kan. 760, 764, 84 P. (2d) 930; Estate of Wickesberg (Outagamie County v.

Shier) 209 Wis. 92, 95, 244 N. W. 561; Kaiser v. State, 80 Kan. 364, 102 P. 454, 24 L.R.A.(N.S.) 295; Bon Homme County v. Berndt, 15 S. D. 494, 90 N. W. 147. We do not see how the question of "due process" enters into the case except insofar as it applies to the foreclosure of a lien once acquired. A lien cannot be acquired unless the recipient consents thereto by the acceptance of the benefits. Without such consent it does not acquire life. The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause. 12 Am. Jur., Constitutional Law, § 573; Bardwell v. Collins, 44 Minn. 97, 101, 46 N. W. 315, 9 L. R. A. 152, 20 A. S. R. 547; State ex rel. Blaisdell v. Billings, 55 Minn. 467, 474, 57 N. W. 206, 794, 43 A. S. R. 525; Snyder v. Massachusetts, 291 U. S. 97, 54 S. Ct. 330, 78 L. ed. 674, 90 A. L. R. 575. If it becomes necessary to foreclose the lien, it must be foreclosed in the manner provided by law for the enforcement of a mechanic's lien. This requires notice and an opportunity to be heard and to defend in orderly proceedings before a tribunal having jurisdiction of the cause. 2 Mason Minn. St. 1927, §§ 8499-8506. There is no denial of due process.

The next reason assigned for the invalidity of c. 315 is that it provides for the taking of private property for public use without just compensation therefor in violation of Minn. Const. art. 1, § 13. It is appellants' theory that the home of a recipient is taken upon his death and sold in satisfaction of the lien and the proceeds paid into the public treasury for public use. Appellants overlook the fact that the lien is acquired with the knowledge and consent of the recipient and is only for the amount of money actually paid him. There is no taking for public use without the payment of just compensation therefor and no taking, in any case, until after the death of recipient nor while the homestead is occupied by his surviving spouse or minor children.

Statutes requiring beneficiaries of public institutional care to transfer their property to the state as a condition precedent to

their being admitted to a state institution have been consistently upheld even though the institution be supported by public taxation of which the beneficiary has paid his share prior to his disability. Bon Homme County v. Berndt, 15 S. D. 494, 90 N. W. 147; Kaiser v. State, 80 Kan. 364, 102 P. 454, 24 L.R.A.(N.S.) 295.

■ Plaintiffs also contend that there is an unlawful delegation of legislative power to the executive department of the government. The cases have gone far in allowing delegation of ministerial duties to an executive officer, board, or commission. The essential things are that the general scope of the statute be defined by the legislature and that the executive department be restricted by the law to act within that scope. The application of the law must depend not on the whim and caprice of the executive but on facts which may be found by the board or other executive officer. See State v. Mc-Masters, 204 Minn. 438, 283 N. W. 767, where the problem of delegation of power is fully discussed. See also State ex rel. Beek v. Wagener, 77 Minn. 483, 80 N. W. 633, 778, 1134, 46 L. R. A. 442, 77 A. S. R. 681; State v. G. N. Ry. Co. 100 Minn. 445, 111 N. W. 289, 10 L.R.A.(N.S.) 250; State v. Minnesota & Ontario Power Co. 121 Minn. 421, 141 N. W. 839; State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759; G. O. Miller Tel. Co. v. Minimum Wage Comm. 145 Minn. 262, 177 N. W. 341; Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L. R. A. 1918F, 542; 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 1597. There is no unlawful delegation found in the act herein challenged.

■ Finally, it is claimed that c. 315 is void because it imposes a liability upon plaintiffs' exempt homestead in violation of Minn. Const. art. 1, § 12, which provides:

"A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law."

Thus, it will be seen that the constitution gives the legislature exclusive power to determine, within the bounds of reasonableness, what and how much property shall be exempt. In the exercise of that power the legislature has included homesteads. 2 Mason Minn.

St. 1927, § 8336. Homestead exemption is therefore purely a creature of statute. The legislature, having created the homestead and having power to increase or diminish it, or to abolish it altogether and substitute other property in its stead, unquestionably has the lesser power to curtail the extent of the exemption. It has done so in the case of taxes and special improvement assessments. 6 Dunnell, Minn. Dig. (2 ed.) § 9125.

The lien does not in fact infringe the homestead immunity, for the amendment expressly limits its enforcement until after the death of both spouses. Upon the death of both spouses (there being no minor children), or upon the alienation of the land, the property ceases to be a homestead. Hawkins v. State Social Welfare Board, 148 Kan. 760, 84 P. (2d) 930. In Kansas, it will be noted, the homestead exemption is embodied into the constitution, while here its provision is merely statutory. Yet the Kansas court in the Hawkins case held that a similar lien law was not violative of the Kansas constitution because enforcement of the lien was expressly reserved until after the property had in fact ceased to be a homestead, that is, until the recipient owner and his spouse had both deceased, or until the homestead was alienated.

It is earnestly contended that the lien is void because the wife did not consent to it, she not having signed the endorsements on her own or her husband's assistance check acknowledging the lien. As to whether her acceptance of the check with knowledge of the law may amount to consent without such endorsement, we need not here decide. Even if she did not consent, the lien is valid against the homestead, and of course against any other property her husband may own. Alienation of a homestead ordinarily requires the consent of both spouses. 2 Mason Minn. St. 1927, § 8340. However, the same section validates purchase money mortgages without the wife's consent. The homestead exemption is a matter subject to regulation by statute. A later statute differing from an earlier one impliedly amends the earlier to the extent of the inconsistency even though the earlier is not expressly referred to by the later. Abramowitz v. Continental Ins. Co. 170 Minn. 215,

217, 212 N. W. 449; Hill v. Village of Aurora, 157 Minn. 469, 196 N. W. 465. C. 315 is the latest enactment here involved. If it be deemed a limitation on, or change of, the statutory homestead immunity from debt provision, then it may be deemed a modification of the earlier homestead statutes. But it cannot be said that the legislature did not act well within its constitutional power. Estate of Wickesberg (Outagamie County v. Shier) 209 Wis. 92, 244 N. W. 561.

It is the state's duty to promote the general welfare. In so doing, it is proper that it grant assistance to the aged. To impose a lien against the property of those recipients of state aid who have property is clearly within its power and discretion. Estate of Wickesberg (Outagamie County v. Shier) *supra*. There is no violation of our constitutional exemption provisions.

Judgment affirmed.

