IN RE ESTATE OF OTTO PAULSON.
HENNEPIN COUNTY v. E. F. JACOBSON.[1]

October 28, 1955.

No. 36,540.

---

[1]Reported in 72 N. W. (2d) 857.

*Stetson & Jacobson,* for appellant.

*George M. Scott,* County Attorney, and *John K. Harvey,* Assistant County Attorney, for respondent.

NELSON, JUSTICE.

One Otto Paulson was granted $4,397.97 in old age assistance benefits from January 1941 through February 1951 by the Hennepin County Welfare Board. While receiving this old age assistance, he was in the process of liquidating stock in a store located at 327 Plymouth Avenue North, Minneapolis. He gave information to the welfare board that he was receiving no more income from such store than proved necessary to pay the cost of rental. He thereby failed to disclose the full and true amount of his income and, in addition, failed to disclose that he was the purchaser of certain real property as a vendee under a contract for deed. By virtue of the receipt of the old age assistance he was able to continue payments under the contract for deed, and it later proved that his estate was enhanced to the amount of the old age assistance received by him. Upon his death his estate was entered for probate showing assets by virtue of his equity in the real property purchased under the said contract for deed, which was finally sold during administration for the sum of $5,600. Hennepin County filed its preferred claim against the estate under the provisions of M. S. A. 256.25. The probate court of said county allowed the claim in full against the estate.

The main issue involved here is whether the claim of the county for old age assistance granted to Otto Paulson during his lifetime constituted a valid claim against his estate as allowed by the probate court and is permitted under the authority of § 256.25 separate from and independent of the provisions of § 256.26. The appellant, the general administrator of the estate, contends that the establishment of an old age assistance lien under § 256.26 constitutes

a prerequisite to the filing of a claim in the probate court under § 256.25 and further contends that the filing of a lien under § 256.26 does not attach to an unrecorded contract for deed. The appellant also contends that § 256.25 must be read in conjunction with § 256.26 and that the latter section, only, applies to recipients of old age assistance who own real estate since it provides, in effect, that no applicant who owns real property within the state shall be paid old age assistance without first giving the county a lien on the recipient's real property located within the state; that thus the county is limited, under the circumstances, in the matter of procedure, to the enforcement of its lien.

The first law authorizing old age assistance is to be found in L. 1929, c. 47. Section 6 thereof reads as follows:

"On the death of a person pensioned, or on the death of the survivor of a married couple, both of whom were so pensioned, the total amount paid as pension, together with simple interest at three per cent annually shall be allowed and deducted from the estate of such person or persons, by the court having jurisdiction to probate the estate. The amount so recovered shall be paid into the treasuries of the county, town, village or city, in the proportion in which they respectively contributed toward the total of the pensions received by the deceased or by the married couple of which the deceased was the survivor."

Thereafter in extra session in the year 1935 our legislature enacted chapter 95 which provided for a state-wide old age assistance program authorizing the state to avail itself of the benefits of the federal Social Security Act, 49 Stat. 620, 42 USCA, § 301, *et seq.* Ex. Sess. L. 1935, c. 95, § 15, reads:

"On the death of any person who receives any old age assistance under this or any previous old age assistance law of this state, or on the death of the survivor of a married couple, either or both of whom received such old age assistance, the total amount paid as old age assistance to either or both, without interest, shall be allowed as a claim against the estate of such person or persons by the court having jurisdiction to probate the estate. * * *"

Said § 15 was later amended by L. 1939, c. 242. This amendment gave preferred status to the old age assistance claim of the county against estate of the recipient by this added language:

"* * * If the value of the estate of any such person or persons has been enhanced as a result of the failure on the part of a recipient to make a full disclosure of the amount or value of his property, or the amount or value of the combined property of a married couple, in any old age assistance proceeding, the claim shall be allowed by the probate court as a preferred claim and shall have preference to the extent of such enhancement over all other claims, excepting only claims for expenses of administration, funeral expenses and expenses of last sickness. * * *"

The above language now appears in § 256.25. Clearly, if the foregoing statutes are taken together, they express the intention of the legislature that recovery may always be made from the estate of a deceased recipient of old age assistance when assets are available in the estate for that purpose, regardless of the county's having filed its certificate of old age assistance.

Necessarily, old age assistance grants must be based upon need. Mr. Paulson at the time of his death was receiving his grant of old age assistance, the amount of which was in his, as in all cases, fixed and determined under the provision of M. S. A. 1949, § 256.15, subd. 2, which had been amended from time to time and which read as follows:

"The manner and amount of old age assistance payments shall be fixed with due regard to the conditions in each case in accordance with the rules and regulations of the state agency, but in no case shall it be an amount which, when added to the net income and resources available to the support and care of the applicant, exceeds a total of $55 a month, * * * except for medical, dental, surgical, hospital, nursing, or licensed rest home care, * * *."

Is the establishment of an old age assistance lien by certificate of old age assistance under § 256.26 a prerequisite to the filing of a claim in the probate court under § 256.25 as appellant contends? It is immaterial whether the county has a lien on the premises

covered by the unrecorded contract as far as the filing of the preferred claim in the probate court is concerned. Whichever procedure the county takes, it can only once collect the full amount due it. There is no authority for foreclosing the lien in the probate court. Should the county choose to proceed to enforce the lien, then it must do so by foreclosing in the district court, as the statute provides, "in the manner provided by law for the enforcement of mechanic's liens upon real property." § 256.26, subd. 8. It is clear that the county may file a claim against the estate of an old age recipient even though there be no real property in the estate. The claim therefor need not necessarily be predicated upon a lien on real estate within the state. § 256.25.

▪ The applicable statutes, §§ 256.25 and 256.26, were enacted independently and are independent of each other. The intention of the legislature seems clear since the provision for filing a claim in the probate court for old age assistance paid to a deceased recipient antedates the lien provision of § 256.26 by approximately 10 years. The legislature of this state provided for recovery from estates of persons who had received old age assistance in their lifetime under the first old age assistance law of this state. L. 1929, c. 47, § 6. The county, by L. 1939, c. 315, § 1, was given the right to file its certificate of old age assistance constituting a lien on real property, and it was thereby protected from fraudulent practices of selling real property before the recipient died. The county is not compelled to proceed alone by virtue of the lien filed. The county may proceed, as in the instant case, by filing its claim against the estate being probated. Under the present circumstances, it was authorized to file its preferred claim independent of any other relief provided for, or it could proceed by foreclosing its lien under § 256.26.[2]

---

[2]Under § 256.26, subd. 2, a recipient of old age assistance is required to sell his real property situate without the state, having due regard to the nature and marketability of the property, and to use the proceeds for his support; under subd. 3 it is provided that no person shall be paid old age assistance without first giving the state a lien on all his property situate within the state in the manner provided in subd. 5 thereof. Subd. 6 provides

Any other construction would do violence to the obvious intent of the legislature that the county recover in all cases the amount of old age assistance paid, either through enforcement of the lien, or by the filing of a claim against the decedent's estate where assets are found available to pay such claims.

■ A certificate of old age assistance was filed against Otto Paulson during his lifetime under § 256.26, January 14, 1941, in the office of the Register of Deeds of Hennepin County. Did the filing of the old age assistance lien in the instant case attach to the recipient's unrecorded contract for deed? Of course, in this case the county of Hennepin did not at any time attempt to enforce its lien. It found it unnecessary to do so since the assets of the estate were sufficient to pay off its preferred claim in full.

Section 256.26, subd. 6, provides:

"Thereupon the lien hereby imposed shall arise. It shall attach to all real property then owned by the recipient or thereafter acquired, * * * *."

The old age assistance lien, if filed, attaches under this provision to the interest of the decedent in real property, whether that interest arose from contract for deed or some other source or whether it is an after-acquired interest. Such lien attaches to the interest or equity owned by the recipient. It is the fact of ownership of an interest in real estate or real property which supports the lien, not the instrument under which the interest arose, whether recorded or unrecorded. Dimke v. Finke, 209 Minn. 29, 295 N. W. 75.

The appellant has cited Gau v. Hyland, 230 Minn. 235, 41 N. W. (2d) 444, as a controlling case. That case has no application here and does not apply to the facts in this case since the lien here is not an issue, nor did the interest of Otto Paulson arise originally

when such lien shall take priority and the second paragraph of subd. 6 further provides: "In case of the death of the recipient the debt secured by such lien shall be a claim against his estate and, after expenses of administration, funeral expenses, expenses of last illness, and debts having preference by the laws of the United States, and taxes, shall have priority over all other debts."

as a joint tenant or as a survivor of a joint tenancy relationship. While the appellant raised the defense of the statute of limitations in the court below, the issue has not been assigned or raised before this court, and therefore will not be considered here.

Since we have concluded that §§ 256.25 and 256.26 are independent enactments and supplement each other in providing for full and complete recovery where real property or assets are legally available, it appears that all objections raised in the disposition of this matter in the court below and presented here must be resolved in favor of the respondent.

Affirmed.